# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

SP FREDERICA, LLC; PEACH    *
CONSOLIDATED PROPERTIES,    *
LLC; and FLASH FOODS, INC.,    *
   *
      Plaintiffs,    *           CV 215-73
   *
      v.    *
   *
GLYNN COUNTY; GLYNN COUNTY    *
BOARD OF COMMISSIONERS;    *
MICHAEL BROWNING; DALE    *
PROVENZANO; RICHARD    *
STRICKLAND; BILL BRUNSON;    *
ALLEN BOOKER; MARK    *
STAMBAUGH; BOB COLEMAN;    *
GLYNN COUNTY ISLANDS    *
PLANNING COMMISSION; PRESTON    *
KIRKENDALL; ROBERT USSERY;    *
DESIREE WATSON; JOEL WILLIS;    *
WILLIAM LAWRENCE; STAN    *
HUMPHRIES; KAREN WARD; THE    *
GLYNN COUNTY BOARD OF    *
APPEALS; WALTER RAFOLSKI;    *
PETER SCHOENAUER; PAUL    *
FISHER; MATTHEW PERMAR; and    *
PHILIP VIVIANI,    *
   *
      Defendants.    *

### ORDER

Presently before the Court is Defendants' Motion to Dismiss. Dkt. No. 20.[1] Plaintiffs have filed a Response in

---

[1] The docket lists "Glynn County Islands Planning Commissioner" as a Defendant in this case. As the parties' briefing on the instant

opposition to Defendants' Motion, dkt. no. 22, to which Defendants have filed a Reply, dkt. no. 25. For the reasons that follow, Defendants' Motion (dkt. no. 20) is **GRANTED in part** and **DENIED in part** as follows: it is **GRANTED** to the extent that Defendants seek the dismissal of Plaintiffs' federal claims, and it is **DENIED** insofar as they request a dismissal of the state-law claims against them. Additionally, the Court finds that this action must be **REMANDED** to state court for adjudication of Plaintiffs' state-law claims.

## BACKGROUND

Plaintiffs SP Frederica, LLC ("SP Frederica"); Peach Consolidated Properties, LLC ("Peach"); and Flash Foods, Inc. ("Flash Foods") are businesses that are incorporated or organized in Georgia and maintain their principal places of business in this State. Dkt. No. 1-8, pp. 45-83 (Amended Complaint, hereinafter "Am. Compl."), ¶¶ 1-3. On September 4, 2014, Peach contracted with SP Frederica to purchase a parcel of land (the "Property") that it owned in Glynn County, Georgia. Id. at ¶¶ 3, 33. As a condition to Peach's purchase of the Property, the contract provided that Peach must be able to obtain a conditional use permit for an automobile service station and convenience store on the Property. Id. at ¶ 34.

---

Motion reflects that the proper name of this Defendant is "Glynn County Islands Planning Commission," see dkt. nos. 20, 22, 25, the Clerk of Court is **DIRECTED** to update the docket accordingly.

AO 72A
(Rev. 8/82)

The contracting parties intended that Flash Foods, a company that owns automobile service stations and convenience stores throughout Georgia and Florida, be the ultimate beneficiary of the contract. Id. at ¶ 1.

Defendants are Glynn County, a political subdivision of the State of Georgia, and its governing entities and officials. See id. at ¶¶ 4-26. Its governing entities include, in part, the Glynn County Board of Commissioners (the "Board of Commissioners"), which is "the duly elected and qualified governing body of Glynn County." Id. at ¶ 5. Additionally, Plaintiffs name the Glynn County Islands Planning Commission (the "Islands Planning Commission"), which serves as "the duly appointed and qualified zoning administrator . . . [that] acts under and on behalf of Glynn County" and has the authority to grant conditional use permits for the county. Id. at ¶ 6. The final entity-Defendant is The Glynn County Board of Appeals (the "Board of Appeals"), which was created pursuant to Article X of the Glynn County Zoning Ordinances to "act[] under and on behalf of Glynn County . . . . [in] considering the granting of variances to [the] specific provisions of the Zoning Ordinance[s]." Id. at ¶ 21.

The Defendant officials are Michael Browning, Dale Provenzano, Richard Strickland, Bill Brunson, Allen Booker, Mark Stambaugh, Bob Coleman, Preston Kirkendall, Robert Ussery,

Desiree Watson, Joel Willis, William Lawrence, Stan Humphries, Karen Ward, Walter Rafolski, Peter Schoenauer, Paul Fisher, Matthew Permar, and Philip Viviani.  Id. at ¶¶ 7-20, 22-26. Each of these Defendants resides in Glynn County and is a member of either the Board of Commissioners, the Islands Planning Commission, or the Board of Appeals.  Id.

## I.  Glynn County Zoning Ordinance

At all relevant times, the Property has been zoned as a Planned Development District ("PD") under the Glynn County Zoning Ordinance.  Id. at ¶ 35.  Land zoned as a PD is subject to the uses permitted in its Development Text, and the Development Text applicable to the Property in this case contemplates both Highway Commercial ("HC") and General Commercial ("GC") uses.  Id. at ¶¶ 35-36.

Both the HC and GC zoning provisions include an automobile service station as a "conditional use"—in other words, a use that may be permitted in certain circumstances.  See id. at ¶ 37.  The HC zoning provisions specifically state that

> subject to the conditions set forth in Section 904 . . . . [an] Automobile service station [is permitted] provided that[] [a]ll pumps are set back at least fifteen (15) feet from the right-of-way line of any street; and [] [p]aved parking and/or service areas are separate from adjoining residential properties by a suitable planting screen, fence, or wall at least six (6) feet in height above finished grade.

AO 72A
(Rev. 8/82)

Id. at ¶ 38 (alterations in original) (quoting Glynn County, Ga., Zoning Ordinance art. VII, § 713.3(3) ("Section 713.3")). As cited within Section 713.3, "Section 904" provides that the Islands Planning Commission, in reviewing an application for a conditional use permit, "should consider" the following items:

> a) [t]he effect the proposed activity will have on traffic flow along adjoining streets; b) [t]he location of off-street parking facilities; c) [t]he number, size and types of signs proposed for the site; d) [t]he amount and location of open space; e) [p]rotective screening; f) [h]ours and manner of operation; g) [o]utdoor lighting; h) [i]ngress and egress to the property; and i) [c]ompatability with surrounding land use.

Id. at ¶ 39 & n.4 (alterations in original) (first citing Glynn County, Ga., Zoning Ordinance art. III, § 302; then quoting id. art. IX, § 904.3).

> Similarly, the GC zoning provisions mandate that
>
> subject to the conditions set forth in Section 704 . . . . [an] Automobile service station [is permitted] provided that[] [a]ll pumps are set back at least fifteen (15) feet from the right-of-way line of any street; and [] [p]aved parking and/or service areas are separate from adjoining residential properties by a suitable planting screen, fence, or wall at least six (6) feet in height above finished grade.

Id. at ¶ 40 (alterations in original) (quoting Glynn County, Ga., Zoning Ordinance art. VII, § 712.3(3)). "Section 704" pertains almost exclusively to properties in FA Forest Agricultural Districts and, therefore, does not apply to the

Property in question.  Id. at ¶ 41 (citing Glynn County, Ga.,
Zoning Ordinance art. VII, § 704).

A property owner seeking to engage in these or other
conditional uses set forth in the Glynn County Zoning Ordinance
must file an application for a conditional use permit, as well
as a site plan, with the Glynn County Community Development
Department Planning and Zoning Division ("Planning and Zoning").
See id. at ¶¶ 42, 45 & Ex. 10, pp. 11-1, -3, -5 (Glynn County,
Ga., Zoning Ordinance art. XI, §§ 1102(e), 1103(b), 1104.2(b),
1104.2(e)).  The Planning and Zoning staff prepares a written
report making a recommendation for the approval or disapproval
of the application.  See id. at Ex. 10, p. 11-9 (Glynn County,
Ga., Zoning Ordinance art. XI, § 1106.1(d)).  The Islands
Planning Commission then must consider the application and the
Planning and Zoning report at a public hearing and recommend a
decision on the application to the Board of Commissioners.  See
id. at Ex. 10, pp. 11-1, -3, -9 (Glynn County, Ga., Zoning
Ordinance art. XI, §§ 1102(b), 1103(b)(2), 1103(b)(4)-(5),
1106.1(d)).  While other zoning recommendations are placed on
the agenda for the next meeting of the Board of Commissioners,
the Islands Planning Commission's recommendation on an
application for a conditional use permit is a final action, and
the Board of Commissioners need not render a decision on the

AO 72A
(Rev. 8/82)

matter.  See id. at Ex. 10, pp. 11-3 to 11-4 (Glynn County, Ga.,
Zoning Ordinance art. XI, § 1103(b)(6)).

The Glynn County Zoning Ordinance also provides that "any
person aggrieved . . . by any decision of . . . [a] [c]ounty
official based on this Ordinance" may appeal the decision to the
Board of Appeals.  Id. at Ex. 13, p. 10-2 (Glynn County, Ga.,
Zoning Ordinance art. X, § 1004).  The Board of Appeals may then
"reverse or affirm, wholly or partly, or may modify the order,
requirement, or decision of the . . . administrative official"
and "issue or direct the issuance of a permit."  Id. at Ex. 13,
pp. 10-4 to 10-5 (Glynn County, Ga., Zoning Ordinance art. X, §
1006).

## II.  Plaintiffs' Application for a Conditional Use Permit

On December 24, 2014, Peach and SP Frederica filed an
application for a conditional use permit to construct and
operate an automobile service station on the Property.  Id. at ¶
43.  The Amended Complaint alleges that the Property satisfied
the requirements for an automobile service station under both
the HC and GC provisions of the Glynn County Zoning Ordinance.
Id. at ¶ 44 (citing Glynn County, Ga., Zoning Ordinance art.
VII, §§ 712.3, 713.3).  According to Plaintiffs, the proposed
use also was "compatible with surrounding land uses, as a Shell
Automotive Service Station is approximately one block away from
the . . . Property, and [the] Property is located along a major

7

roadway." Id. at ¶ 34. Upon receiving the application, the Planning and Zoning staff initially was concerned about "the project's anticipated traffic generation and traffic movements," but the Plaintiffs later provided a traffic study that Plaintiffs allege satisfied those concerns. Id. at ¶¶ 46-47 & Ex. 8. By early February 2015, Peach and SP Frederica had obtained the Planning and Zoning staff's recommendation to approve their application for a conditional use permit. Id. at ¶ 50.

On January 20, 2015, the Islands Planning Commission attempted to hold a hearing to address the Plaintiffs' application, but "an unusually high turnout of citizens in the community" presented capacity and fire-code issues that resulted in a rescheduling. Id. at ¶ 51. The rescheduled hearing took place on February 17, 2015, at which time several citizens whom Plaintiffs describe as "well[]intentioned[] but misinformed" voiced opposition to the Plaintiffs' application. Id. at ¶ 55. Specifically, numerous citizens expressed concerns about the traffic that would result from the proposed use. Id. These individuals shared "seemingly anecdotal information regarding how the traffic situation [was] already poor" on the road in front of the Property, but did not offer any traffic study into evidence at the hearing. Id. The Islands Planning Commission

AO 72A
(Rev. 8/82)

orally denied the Plaintiffs' application at the conclusion of the hearing. Id. at ¶ 57.

According to Plaintiffs, the Glynn County Zoning Ordinance is unclear as to appeal rights, and, therefore, their counsel contacted Planning and Zoning to inquire about the same on March 6, 2015. Id. at ¶¶ 59, 61. Planning and Zoning staff informed Plaintiffs' counsel that there was no appeal procedure available to Plaintiffs. Id. at ¶ 59. Plaintiffs' counsel thereafter contacted several Glynn County officials, each of whom confirmed that there are no appeal rights for decisions of the Islands Planning Commission. Id.[2]

## III. Plaintiffs' Filing of Suit

Plaintiffs filed a Complaint against Defendants in the Superior Court of Glynn County on March 13, 2015, setting forth several causes of action pursuant to Georgia law. Dkt. No. 1-1, pp. 1-24. On May 19, 2015, Plaintiffs amended the Complaint to add various federal constitutional and statutory claims. See Am. Compl. In count one of the Amended Complaint, Plaintiffs seek a mandamus under Georgia law requiring Defendants to issue the conditional use permit and allow the construction of an automobile service station on the Property. Id. at ¶¶ 77-84.

---

[2]  Plaintiffs allege that they proceeded to file appeals with the Board of Commissioners and Board of Appeals "out of an abundance of caution," but nevertheless maintain that the Islands Planning Commission's decision constituted a final action that exhausted their administrative remedies. Am. Compl., ¶ 61.

AO 72A
(Rev. 8/82)

Plaintiffs' count two alleges that they are entitled to a declaratory judgment that Defendants violated their constitutional rights in the following ways: (1) that Defendants' denial of their application for a conditional use permit destroyed their property rights without just compensation, in violation of the Georgia constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) that the denial constituted a taking of the Property without just compensation, in violation of the Georgia constitution, as well as the U.S. Constitution's Just Compensation Clause under the Fifth Amendment and Due Process and Equal Protection Clauses under the Fourteenth Amendment; (3) that the existing zoning classification for the Property and its application to the Property are arbitrary and capricious and discriminate between Plaintiffs and other similarly situated individuals and business, in violation of Plaintiffs' rights under the Georgia constitution and the Fourteenth Amendment Equal Protection Clause; and (4) that the existing zoning classification for the Property is exclusionary, arbitrary, and capricious, in violation of the Georgia constitution and the Fourteenth Amendment Due Process Clause. Id. at ¶¶ 85-100. Plaintiffs echo these allegations and seek the same declaratory relief in counts eight and ten. See id. at ¶¶ 150-57, 163-70.

10

Plaintiffs also rely on each of these alleged constitutional violations as grounds for other forms of relief in counts three through six. See id. at ¶¶ 101-44. Count three seeks declaratory relief and damages for the alleged taking without just compensation; count four requests declaratory and other appropriate relief based on the alleged taking without due process; count five pleads entitlement to injunctive relief due to the allegedly arbitrary and capricious nature of the Glynn County Zoning Ordinance and its application to the Property; and count six seeks injunctive relief for the alleged equal protection violations. Id.

In count seven of the Amended Complaint, Plaintiffs claim that Defendants are liable for damages based on an alleged inverse condemnation of the Property. Id. at ¶¶ 145-49. Plaintiffs' count nine seeks temporary and permanent injunctions against the enforcement of the Glynn County Zoning Ordinance to the Property and other appropriate equitable and ancillary relief, presumably on the same grounds as the preceding constitutional claims. Id. at ¶¶ 158-62. Count eleven sets forth claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for injunctive relief and damages based on the same constitutional violations previously alleged. Id. at ¶¶ 171-77.[3] Finally,

_____

[3] In this count, Plaintiffs' Amended Complaint deviates slightly from the manner in which it pleads the alleged federal constitutional

AO 72A
(Rev. 8/82)

Plaintiffs allege that they are entitled to recover attorney's fees, costs, and expenses under 42 U.S.C. § 1988 ("Section 1988") and the Georgia constitution in count twelve, and pursuant to Georgia law in counts thirteen and fourteen. Id. at ¶¶ 178-85.

Soon after Plaintiffs filed the Amended Complaint, Defendants removed the action to this Court on June 18, 2015. Dkt. No. 1. As the basis for removal, Defendants cited the newly added federal constitutional and statutory claims as invoking this Court's federal-question jurisdiction. Id. at p. 2. Defendants subsequently filed their Motion to Dismiss, which is now ripe for review. Dkt. No. 20.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(2). A responding party thus may move to dismiss the complaint based on a "lack of

---

violations in the previous counts, as it states the following: (1) that Defendants' regulatory taking of the Property without just compensation violated the Fifth and Fourteenth Amendments to the U.S. Constitution; (2) that the denial of their application for a conditional use permit infringed Plaintiffs' due process rights under the Fifth and Fourteenth Amendments; and (3) that the denial of the application was arbitrary, capricious, and discriminatory, in violation of the equal-protection guarantees of the Fifth and Fourteenth Amendments. See Am. Compl., ¶¶ 171-77.

AO 72A
(Rev. 8/82)

subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1), or a "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). In addition, a district court must dismiss an action if it finds at any time that it lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(h)(3), and remand an action that has been removed from state court if it determines at any time that subject-matter jurisdiction is lacking, 28 U.S.C. § 1447(c).

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint in setting forth a claim to relief. See Fed. R. Civ. P. 12(b)(6). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). To be plausible on its face, a complaint must set forth enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A plaintiff, therefore, must plead more than mere labels and conclusions, and a formulaic recitation of the elements of a particular cause of action does not suffice. Twombly, 550 U.S. at 555. Rather, at a minimum, a complaint should "contain either direct or inferential allegations respecting all the

13

material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

In evaluating a Rule 12(b)(6) motion, a court must "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor." Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Ordinarily, a court's review on a motion to dismiss is limited to the factual allegations on the face of the complaint, see Iqbal, 556 U.S. at 678, and a party's presentation of matters outside of the pleadings transforms the motion into one for summary judgment, Fed. R. Civ. P. 12(d). However, there are certain instances in which a court may consider matters outside of the pleadings at the dismissal stage. See Davis v. Self, 547 F. App'x 927, 929 (11th Cir. 2013). For example, the court may take into account facts that are subject to judicial notice and documents that are incorporated into the complaint by reference. See Fed. R. Evid. 201(a)-(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably

14

be questioned."); <u>Brooks v. Blue Cross & Blue Shield of Fla.</u>, 116 F.3d 1364, 1368 (11th Cir. 1997) (a court may examine documents attached to the complaint).

## DISCUSSION

Defendants move to dismiss this action pursuant to Rule 12(b)(6), on the basis that Plaintiffs fail to state any viable claim for relief against them. Dkt. No. 20. Citing almost exclusively to Georgia law, Defendants argue that Plaintiffs cannot proceed with their official-capacity mandamus claims, federal and state constitutional claims, and claims for declaratory and injunctive relief, because sovereign immunity and qualified immunity shield Defendants from suit. <u>Id.</u> at pp. 4-14, 19, 24.[4] Defendants also contend that Plaintiffs fail to sufficiently plead any claim for individual-capacity mandamus, taking without just compensation, inverse condemnation, or attorney's fees. <u>Id.</u> at pp. 14-25.

Mirroring Defendants' reliance on Georgia law, Plaintiffs maintain that dismissal is improper, because Defendants are not immune from suit where the violation of a fundamental constitutional right is at issue. <u>See</u> Dkt. No. 22, pp. 7-14,

---

[4] Defendants also allege that Plaintiffs' federal constitutional claims in counts two, four, five, and six are improper and are more appropriately asserted under Section 1983 in count eleven. Dkt. No. 20, p. 12.

AO 72A
(Rev. 8/82)

19-20.[5] Plaintiffs further submit that their factual allegations plausibly demonstrate their entitlement to relief on each of the asserted grounds. Id. at pp. 14-25.

## I. **Proper Characterization of Plaintiffs' Federal Claims**

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. While the Fifth Amendment applies only as a limitation on the federal government, its prohibition on takings without just compensation applies to the states through the Fourteenth Amendment. See Bickerstaff Clay Prods. Co. v. Harris Cty. by & Through Bd. of Comm'rs, 89 F.3d 1481, 1490 n.6 (11th Cir. 1996).[6] Additionally, it is the Due Process Clause of the Fourteenth Amendment, rather than the Fifth Amendment, that explicitly applies to the states. See U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."). The Fourteenth Amendment further provides that no state

---

[5] Plaintiffs do not respond to Defendants' immunity arguments with regard to the declaratory-judgment claims in counts eight and ten. See Dkt. No. 22. Plaintiffs' failure to do so, however, does not result in their abandonment of these claims at this stage. See Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007).

[6] For ease of exposition, the Court hereinafter refers only to the Fifth Amendment in discussing takings claims; however, these references should be interpreted to mean takings claims under the Fifth and Fourteenth Amendments.

16

shall "deny to any person within its jurisdiction the equal protection of the laws." Id.

The Fifth Amendment thus establishes a basis for just compensation claims against the government for taking private property for public use without providing remuneration. See Hendler v. United States, 952 F.2d 1364, 1371 (Fed. Cir. 1991). The Fourteenth Amendment, however, does not provide a private right of action for deprivations of the due process and equal protection rights afforded thereunder. See U.S. Const. amend. XIV. Rather, Section 1983 is the vehicle through which a plaintiff may seek redress from a state governmental entity or employee for a violation of its Fourteenth Amendment or other federal constitutional or statutory rights. See 42 U.S.C. § 1983.

In the case at bar, Plaintiffs appear to confuse the role of the Just Compensation Clause of the Fifth Amendment in pleading takings claims against the local-government Defendants in count three of the Complaint. See Am. Compl., ¶ 110. However, the Court construes Plaintiffs' allegations of a Fifth Amendment taking in their favor and thus as intending to refer to takings claims under the Fifth and Fourteenth Amendments. Additionally, Plaintiffs err in attempting to plead causes of action directly pursuant to the Fourteenth Amendment Due Process and Equal Protection Clauses in counts four, five, and six. See

17

id. at ¶¶ 96-100, 121-25, 134-38, 140. As the Fourteenth Amendment itself provides no avenue for relief, Plaintiffs may vindicate their due process and equal protection rights only through their Section 1983 claims in count eleven. See id. at ¶¶ 174-76. However, insofar as count eleven cites the Fifth and Fourteenth Amendments for the due process and equal protection allegations therein, the Court notes that these allegations implicate only the Fourteenth Amendment. See id.

Accordingly, Defendants' Motion is **GRANTED** to the extent that it seeks the dismissal of Plaintiffs' federal due process and equal protection claims in counts four, five, and six.

## II. Sovereign Immunity

States are immune from private suits without their consent, pursuant to the Eleventh Amendment to the U.S. Constitution and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712-13 (1999). The Just Compensation Clause of the Fifth Amendment, by its own force, abrogates state sovereign immunity by allowing suits against the government where there has been an unreimbursed taking of property for a public purpose. See First English Evangelical Lutheran Church of Glendale v. L.A. Cty., 482 U.S. 304, 315-16, 316 n.9 (1987); Eide v. Sarasota Cty., 908 F.2d 716, 720-21 (11th Cir. 1990). Accordingly, to the extent that Defendants attempt to invoke sovereign immunity as to Plaintiffs' Fifth Amendment just

18

compensation and inverse condemnation claims in counts three and seven, respectively, they do so in error.

Section 1983, by contrast, does not trump the well-established immunity of a state. Will v. Mich. Dep't of St. Police, 491 U.S. 58, 67 (1989). Significantly, "it is federal law, not state law, that ultimately governs whether an entity is immune under the Eleventh Amendment." Lightfoot v. Henry Cty. Sch. Dist., 771 F.3d 764, 771 (11th Cir. 2014) (citing Stewart v. Baldwin Cty. Bd. of Educ., 908 F.2d 1499, 1509 (11th Cir. 1990)). Federal law provides that the Eleventh Amendment affords sovereign immunity both to states and state officials in their official capacities in appropriate circumstances. Stewart, 908 F.2d at 1509 (citing Mt. Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)). However, unlike Georgia law, which affords sovereign immunity to counties, Lightfoot, 771 F.3d at 771 (citing Coffee Cty. Sch. Dist. v. Snipes, 454 S.E.2d 149, 150 (Ga. Ct. App. 1995)), the Eleventh Amendment "does not extend to counties, municipal corporations, or other political subdivisions of the state," Stewart, 908 F.2d at 1509 (citing Mt. Healthy Bd. of Educ., 429 U.S. at 280).

Whether Eleventh Amendment immunity protects a local government entity turns on whether the entity qualifies as an "arm of the [s]tate" or as a "municipal corporation or other political subdivision." Stewart, 908 F.2d at 1509 (quoting Mt.

19

Healthy Bd. of Educ., 429 U.S. at 280). While federal law
governs the ultimate question of whether the state is "the real
party in interest," a court must look to how state law defines
the entity's function and character to determine whether it
constitutes an arm of the state for immunity purposes. Id.
(citing Fouche v. Jekyll Island–St. Park Auth., 713 F.2d 1518,
1520 (11th Cir. 1983)). Factors relevant to this inquiry
include "(1) how the state law defines the entity; (2) the
degree of state control over the entity; and (3) the entity's
fiscal autonomy." Id. (citing Harden v. Adams, 760 F.2d 1158,
1163 (11th Cir. 1985); Tuveson v. Fla. Governor's Council on
Indian Affairs, 734 F.2d 730, 732 (11th Cir. 1984); and Fouche,
713 F.2d at 1520).

Here, Glynn County plainly lies outside the scope of
Eleventh Amendment protection. Nor does any of the other
government-entity Defendants function as an arm of the State of
Georgia that is entitled to immunity under the Eleventh
Amendment. Under Georgia law, the governing body of a county is
a board of commissioners, O.C.G.A. § 36-5-20, and, therefore,
the Board of Commissioners in this case, including its members
in their official capacities, essentially holds the same
position as Glynn County itself with respect to the Eleventh
Amendment. The Board of Commissioners has created the Islands
Planning Commission and the Board of Appeals to fulfill specific

AO 72A
(Rev. 8/82)

roles relating to zoning in Glynn County. See Glynn County, Ga., Zoning Ordinance art. III, § 301; id. art. X, § 1001. As these entities exist pursuant to county ordinance as opposed to State law, and are subject to local rather than State control, the Court cannot find that they are State Defendants for the purposes of sovereign immunity.

Thus, the Court rejects Defendants' argument that sovereign immunity under the Eleventh Amendment bars any of Plaintiffs' federal claims against them.

### III. Duplicative Claims

In terms of liability under federal law, "a suit against a public official in his official capacity is considered a suit against the local government entity he represents." Owens v. Fulton Cty., 877 F.2d 947, 951 n.5 (11th Cir. 1989) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). When a plaintiff files suit against both the public official in his official capacity and the governmental entity, it is appropriate for the court to dismiss the defendants named in their official capacities as "redundant and possibly confusing to the jury." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).

In the instant matter, Plaintiffs have sued Glynn County, the Board of Commissioners, the Islands Planning Commission, and the Board of Appeals. See Am. Compl. Plaintiffs' federal claims against the members of these local government entities in

AO 72A
(Rev. 8/82)

their official capacities are duplicative of their suit against the entities themselves and thus should be dismissed. See, e.g., Gonser v. Twiggs Cty., 182 F. Supp. 2d 1253, 1256-57 (M.D. Ga. 2002) (dismissing suit against county commissioners in their official capacities as duplicative of that against the county board of commissioners), aff'd, 88 F. App'x 389 (11th Cir. 2003). Accordingly, Defendants' Motion to Dismiss is **GRANTED** to the extent that Plaintiffs' federal claims are asserted against the named Defendants in their official capacities.

## IV. Qualified Immunity[7]

Federal law provides that government officials engaging in discretionary functions have qualified immunity from suits in their individual capacities for money damages, unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007) (quoting Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)). A government official who raises qualified immunity as an

---

[7] Prior to reaching qualified immunity, the Court notes that legislative immunity under federal law protects county commissioners in their individual capacities from suits concerning legislative acts. See Woods v. Gamel, 132 F.3d 1417, 1419 (11th Cir. 1998). Certain of Plaintiffs' claims against the individual members of the Board of Commissioners relate to their policymaking function in promulgating the Glynn County Zoning Ordinance. See Am. Compl., ¶¶ 99-100, 156-57, 169-70. However, because Defendants do not raise legislative immunity as a basis for dismissal of Plaintiffs' federal claims, and because the Court finds that these claims fail in any event, the Court declines to further address this issue.

AO 72A
(Rev. 8/82)

affirmative defense "must initially establish that he was acting within his discretionary authority." Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007). If it is shown that the official was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." Id. at 1136-37.

For the plaintiff to overcome qualified immunity, it must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)); see also Davis, 547 F. App'x at 933 ("Meanwhile, as the Supreme Court recently reiterated, '[q]ualified immunity . . . protects all but the plainly incompetent or those who knowingly violate the law.'" (alterations in original) (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012))). If the plaintiff prevails on both prongs, then the defendant cannot obtain dismissal on qualified immunity grounds. See Holloman ex rel. Holloman, 370 F.3d at 1264. A court may decide, in its discretion, which of the two prongs to analyze first. Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

23

## A. Discretionary Function

An official was acting in the scope of his discretionary authority if he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id. at 1265-66 (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)). This test requires analyzing the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id. at 1266. For the first prong, "the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." Id. (emphasis omitted).

For the second prong, the Court must determine whether the official was "executing the job-related function—that is, pursuing his job-related goals—in an authorized manner." Id.

> Each government employee is given only a certain "arsenal" of powers with which to accomplish [his] goals. For example, it is not within a teacher's official powers to sign her students up for the Army to promote patriotism or civic virtue, or to compel them to bring their property to school to redistribute their wealth to the poor so that they can have firsthand experience with altruism.

AO 72A
(Rev. 8/82)

Id. at 1267. Qualified immunity does not protect one who pursues a job-related goal through means "fall[ing] outside the range of discretion that comes with an employee's job." Id.

In the case at bar, Defendants adequately demonstrate that the individual members of the various local government entities were acting in their discretionary capacities when the alleged constitutional violations occurred. See Dkt. No. 20, p. 11; Dkt. No. 25, p. 9. The members of the Board of Commissioners, in passing the zoning regulations at issue, were acting squarely within the realm of their legitimate job-related functions. See Ga. Const. art. IX, § 2, paras. IV-V (governing body of a county may adopt zoning ordinances); O.C.G.A. § 36-5-20 (county board of commissioners is governing body of a county). The members of the Islands Planning Commission are responsible for carrying out its duties as zoning administrator, which included rendering a decision on the application for a conditional use permit in this case. See Am. Compl., ¶ 6; see also Glynn County, Ga., Zoning Ordinance art. XI, §§ 1102(b), 1103(b)(2), 1103(b)(4)-(5). Defendants need not show that the members of the Board of Appeals acted in a discretionary capacity at any time, because Plaintiffs do not allege any actions on the part of these individuals. See Am. Compl., ¶ 21.

While Plaintiffs dispute the wisdom of Defendants' ultimate decisions in approving certain zoning provisions and denying

AO 72A
(Rev. 8/82)

Plaintiffs' permit application, Plaintiffs do not allege that these Defendants used unauthorized means to fulfill these job-related goals. See Dkt. No. 22, pp. 13-14. Rather, because the factual allegations indicate that these individuals were performing their duties as members of the Board of Commissioners, Islands Planning Commission, and Board of Appeals when the alleged constitutional violations occurred, they have sustained their burden of showing that they were acting within the scope of their discretionary authority. The burden thus shifts to Plaintiffs to demonstrate that qualified immunity does not protect their alleged conduct while acting in this capacity.

**B. Violation of a Constitutional Right**

"[Z]oning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68 (1981) (quoting Moore v. E. Cleveland, 431 U.S. 494, 514 (1977) (Stevens, J., concurring)). The Court of Appeals for the Eleventh Circuit has identified certain types of constitutional challenges that arise in the zoning context, which include claims for "just compensation, due process takings, arbitrary and capricious takings, and equal protection." Eide, 908 F.2d at 720; but see Villas of Lake Jackson, Ltd. v. Leon Cty., 121 F.3d 610, 614 (11th Cir. 1997) (due process takings claim is now subsumed by

AO 72A
(Rev. 8/82)

just compensation claim (citing Corn v. City of Lauderdale Lakes, 95 F.3d 1066 (11th Cir. 1996))).

As set forth infra, Plaintiffs fail to plausibly allege that any actions taken by the individual Defendants violated their constitutional rights. See infra Parts V-IX. Because Plaintiffs' pleadings are insufficient to demonstrate the violation of a clearly established constitutional right, Plaintiffs cannot overcome the application of qualified immunity at this stage. Defendants' Motion is, therefore, **GRANTED** on qualified-immunity grounds insofar as it seeks the dismissal of Plaintiffs' Section 1983 claims for money damages against the individual Defendants.

## V. Just Compensation Claims Under the Fifth Amendment and Section 1983 and Inverse Condemnation Claims (Counts 3, 7, and 11)

The Just Compensation Clause of the Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment, mandates that "private property shall not be taken for public use without just compensation." U.S. Const. amend. V; Givens v. Ala. Dep't of Corrs., 381 F.3d 1064, 1066 (11th Cir. 2004). A property owner aggrieved by a local zoning ordinance or regulation may pursue a just compensation claim to obtain "monetary compensation for the value taken," Reahard v. Lee Cty., 30 F.3d 1412, 1418 & n.7 (11th Cir. 1994) (citing Reahard v. Lee Cty., 968 F.2d 1131, 1136 (11th Cir. 1992)), as well as

AO 72A
(Rev. 8/82)

invalidation of the ordinance, <u>Villas of Lake Jackson, Ltd.</u>, 121
F.3d at 614 (citing <u>Corn</u>, 95 F.3d at 1066).

For a just compensation claim to be ripe for adjudication
in federal court, the property owner must allege that the local-
government action "has 'denie[d] all economically beneficial or
productive use of' [its] property." <u>Agripost, Inc. v. Miami-
Dade Cty., ex rel. Manager</u>, 195 F.3d 1225, 1231 (11th Cir. 1999)
(alteration in original) (quoting <u>Lucas v. S.C. Coastal Council</u>,
505 U.S. 1003, 1015 (1992)) ("[T]he governmental action must
have made the property worthless."). The landowner also "must
allege either that the state law provides . . . no process for
obtaining just compensation (such as an action for inverse
condemnation) or that the state law appears to provide such
process, but due to state court interpretation, the process is
inadequate." <u>Id.</u> "If the property owner makes either
allegation, then [its] Fifth Amendment takings claim is ripe."
<u>Id.</u> Alternatively, if it makes neither allegation and cannot do
so because an adequate process for obtaining just compensation
exists under state law, then its Fifth Amendment takings claim
is not ripe for adjudication. <u>Id.</u> "If such a claim is pending
in federal district court, the district court must dismiss it
for lack of subject matter jurisdiction since the owner has
failed to establish an Article III 'case or controversy.'" <u>Id.</u>
(citing <u>Reahard</u>, 30 F.3d at 1417 (landowner cannot litigate just

AO 72A
(Rev. 8/82)

compensation claim in federal court until state declines to provide adequate procedures for obtaining just compensation)).

Plaintiffs fail to make either allegation necessary to establish the ripeness of their just compensation claims. While Plaintiffs state that Defendants' denial of a conditional use permit has "deprive[d] [them] of reasonable economic use and development of their Property," am. compl., ¶ 68, their subsequent averments repeatedly make clear that the alleged deprivation is of "an economically viable use of their land," id. at ¶¶ 97, 110, 122, 135, 154, 167 (emphasis added), as opposed to "'all economically beneficial or productive use of' [the] [P]roperty," Agripost, Inc., 195 F.3d at 1231 (emphasis added) (quoting Lucas, 505 U.S. at 1015). Moreover, the gravamen of Plaintiffs' alleged injury is that the denial of the permit diminished the Property's utility and functionality only insofar as Plaintiffs "cannot use the Property for their automobile service station and convenience store, which was their purpose in purchasing the [P]roperty," am. compl., ¶¶ 146-47, and Plaintiffs otherwise recognize that "[t]he zoning scheme provides for general business use," id. at ¶ 87. Assuming the truth of Plaintiffs' factual allegations, as the Court must do at this stage, Defendants' actions left open ample alternative business uses for the Property and thus have not rendered the Property worthless by any measure.

29

Nor do Plaintiffs allege that a process for obtaining just compensation is unavailable or inadequate under Georgia law. In Georgia, state law provides a procedure for obtaining just compensation for takings resulting from zoning decisions. See, e.g., Benton v. Savannah Airport Comm'n, 525 S.E.2d 383, 386 (Ga. Ct. App. 1995). Plaintiffs filed this case in the Superior Court of Glynn County, dkt. no. 1-1, pp. 1-24, and Defendants thereafter removed the action to this Court, dkt. no. 1. As Plaintiffs have not been able to pursue their takings claims in state court, their claims for just compensation and inverse condemnation under federal law are not ripe for adjudication. The Court, therefore, must **DISMISS** these claims for lack of subject-matter jurisdiction.

## VI. Section 1983 Due Process Takings Claims (Count 11)

The Fourteenth Amendment's Due Process Clause states that no state shall "deprive any person of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. In Eide, the Eleventh Circuit outlined four types of constitutional claims available to a property owner aggrieved by a zoning ordinance or regulation, one of which was a "due process takings" challenge. See 908 F.2d at 720. It explained that the essence of a due process takings claim was that "the application of the regulation goes so far and destroys the value of [the] property to such an extent that it has the same effect

30

as a taking by eminent domain." Id. at 721. However, in Villas of Lake Jackson, Ltd., the Eleventh Circuit held that this type of "substantive due process takings" claim is now subsumed by a Fifth Amendment just compensation claim and no longer constitutes an independent cause of action. 121 F.3d at 612.

Based on the Eleventh Circuit's holding in Villas of Lake Jackson, Ltd., Plaintiffs cannot proceed under a due process takings theory. Plaintiffs' allegations in this regard are subsumed by their just compensation claims under the Fifth Amendment and Section 1983. See Am. Compl., ¶¶ 109-10, 173-74. As Plaintiffs' remedy for any wrongdoing on these grounds lies solely under the Fifth Amendment, their Fourteenth Amendment due process takings claims must be dismissed. Defendants' Motion as to these claims is thus **GRANTED**.

## VII. Section 1983 Arbitrary and Capricious Due Process Claims (Count 11)

Although the Eleventh Circuit has abandoned the distinction between just compensation claims and due process takings claims, it continues to recognize the availability of arbitrary and capricious due process claims in limited circumstances. See Kentner v. City of Sanibel, 750 F.3d 1274, 1279-80 (11th Cir. 2014). "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'"

AO 72A
(Rev. 8/82)

McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)). Fundamental rights are most, but not all, of the rights enumerated in the Bill of Rights, as well as certain unenumerated rights created by the U.S. Constitution. Id. (citing Planned Parenthood v. Casey, 505 U.S. 833 (1992)). Property interests, such as those at issue in this case, are not established by the Constitution, but rather are created "by existing rules or understandings that stem from an independent source such as state law." Kentner, 750 F.3d at 1279 (citing Bd. of Regents of St. Colls. v. Roth, 408 U.S. 564, 577 (1972)). "As a result, there is generally no substantive due process protection for state-created property rights." Id. However, one exception to this general rule exists "where a person's state-created rights are infringed by a 'legislative act.'" Id. at 1279-80 (citing Lewis v. Brown, 409 F.3d 1271, 1273 (11th Cir. 2005)). In that situation, the substantive component of the Due Process Clause applies to protect the property owner from "arbitrary and irrational governmental action." Id. (citing Lewis, 409 F.3d at 1273).

There is no definitive test for determining whether challenged actions are legislative or executive (i.e., nonlegislative). Id. (citing Lewis, 409 F.3d at 1273). While some governmental officials perform duties that are patently legislative or executive in nature, "others, like county

32

commissioners[,] . . . act in both a legislative and executive capacity," making it more difficult to "sort[] out which hat they were wearing when they made a decision." Lewis, 409 F.3d at 1273. Nevertheless, the Eleventh Circuit has set forth the following guideposts for this determination:

> Executive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one. McKinney, 20 F.3d at 1557 n.9 (citations omitted). This includes employment terminations or individual acts of zoning enforcement. Id.; see also Crymes v. DeKalb Cnty., Ga., 923 F.2d 1482, 1485 (11th Cir. 1991).

> "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society." McKinney, 20 F.3d at 1557 n.9. "[L]aws and broad-ranging executive regulations are the most common examples." Id. A legislative act also involves policy-making rather than mere administrative application of existing policies. DeKalb Stone, Inc., 106 F.3d at 959. Prospective "zoning-type decisions made by an elected body" are often legislative or quasi-legislative. 75 Acres, LLC v. Miami-Dade Cnty., Fla., 338 F.3d 1288, 1296 n.12 (11th Cir.2003) (citation omitted).

Kentner, 750 F.3d at 1280.

In the instant case, Plaintiffs cannot sustain a due process claim based on the allegedly arbitrary and capricious application of the Glynn County Zoning Ordinance to their request for a conditional use permit. Plaintiffs' property rights exist pursuant to Georgia state law, see, e.g., Rabun Cty. v. Mountain Creek Estates, LLC, 632 S.E.2d 140, 143 (Ga. 2006) (discussing the scope of property rights), and, therefore,

33

they cannot assert a due process claim based on executive actions affecting those rights. Defendants' denial of their permit application constituted an executive action, as it applied only to Plaintiffs and their Property, rather than the residents of Glynn County at large. See Am. Compl., ¶ 57; see also Lewis, 409 F.3d at 1274 ("[E]nforcement of existing zoning regulations is an executive, not legislative[,] act." (quoting DeKalb Stone, Inc. v. Cty. of DeKalb, 106 F.3d 956, 959 (11th Cir. 1997))).

However, to the extent that Plaintiffs argue that the ordinance itself is arbitrary and capricious on its face, Plaintiffs challenge a legislative act. See, e.g., Kentner, 750 F.3d at 1280. The Glynn County Zoning Ordinance applies to the general public in Glynn County, not just to Plaintiffs, and it is a policymaking function of the Board of Commissioners. See Glynn County, Ga., Zoning Ordinance art. I (Preamble and Enactment Clause). Accordingly, Plaintiffs allege an exception to the general rule prohibiting due process claims premised on state-created interests, and the Court must, therefore, proceed beyond the "fundamental rights" inquiry.

"Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." Kentner, 750 F.3d at 1280 (citing Fresenius Med. Care Holdings, Inc. v. Tucker, 704 F.3d 935, 945 (11th Cir.

34

2013)). To survive rational-basis scrutiny, "the challenged provision need only be rationally related to a legitimate government purpose." Foley v. Orange Cty., No. 14-10936, 2016 WL 361399, at *2 (11th Cir. Jan. 29, 2016) (quoting Schwarz v. Kogan, 132 F.3d 1387, 1390-91 (11th Cir. 1998)). A governmental entity is "not required to convince the courts of the correctness of their legislative judgments"; rather, the party challenging the entity's legislative judgment bears the burden of proving that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision[]maker." Kentner, 750 F.3d at 1281 (quoting Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981)). As the Eleventh Circuit has recognized, the rational-basis standard is "highly deferential," such that legislative acts reviewed under this standard are found to be unconstitutional "in only the most exceptional of circumstances." Id. (citing Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001)).

Even accepting Plaintiffs' factual allegations in this case as true, Plaintiffs do not plausibly allege that the Glynn County Zoning Ordinance lacks a rational basis. Plaintiffs' Amended Complaint puts forth mere legal conclusions regarding the allegedly arbitrary and capricious nature of the zoning regulations, without offering any factual matter to support

35

these contentions. See, e.g., Am. Compl., ¶ 73 ("The [z]oning [o]rdinances applicable to the Property are facially and as applied to the Property[] unconstitutional, illegal, null and void[,] as they fail to advance any legitimate government interest."). At most, Plaintiffs allege that the provision regarding the appeal process is unclear, see id. at ¶ 61; however, even this allegation fails to suggest that the actual substance of the ordinance—namely, the scope of appeal rights afforded thereunder—is arbitrary or capricious.

Because Plaintiffs' arbitrary and capricious due process claims are either foreclosed by binding precedent or lack any plausible foundation, they are subject to dismissal. This portion of Defendants' Motion is **GRANTED**.

## VIII. Section 1983 Equal Protection Claims (Count 11)

The Equal Protection Clause of the Fourteenth Amendment mandates that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Equal-protection claims generally concern governmental classification and treatment that impacts an identifiable group of people differently than another group of people." Foley, 2016 WL 361399, at *3 (citing Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1296 (11th Cir. 2012)). An ordinance or regulation that does not target a protected class or implicate a fundamental right is

36

subject to the rational-basis test. Bannum, Inc. v. City of Fort Lauderdale, 157 F.3d 819, 822 (11th Cir. 1998) (citing Ga. Manufactured Hous. Ass'n v. Spalding Cty., 148 F.3d 1304, 1306-07 (11th Cir. 1998)).

Accordingly, a property owner pursuing an equal protection claim as a "class of one" must show that it "has been intentionally treated different from others similarly situated and that there is no rational basis for the difference in treatment." Foley, 2016 WL 361399, at *3 (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "To be similarly situated, the comparators must be prima facie identical in all relevant respects." Id. (quoting Grider v. City of Auburn, 618 F.3d 1240, 1264 (11th Cir. 2010)). The inquiry is then the same as that pertaining to substantive due-process challenges to a zoning ordinance: the ordinance must be "rationally related to the achievement of some legitimate government purpose." Bannum, Inc., 157 F.3d at 822 & n.2 (first citing Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1214 n.6 (11th Cir. 1995); then citing Ga. Manufactured Hous. Ass'n, 148 F.3d at 1306-07).

Here, the Amended Complaint falls far short of stating any viable equal protection claim. The closest that Plaintiffs come to identifying a comparator is their claim that the proposed use in their zoning application was "compatible with surrounding

AO 72A
Rev. 8/82)

land uses, as a Shell Automotive Service Station is
approximately one block away from the . . . Property, and [the]
Property is located along a major roadway." See Am. Compl., ¶
34. Significantly, the Amended Complaint contains no indication
that the owner of the neighboring service station applied for
and obtained a permit for this use at a time when the applicable
zoning ordinance was in place. Even if Plaintiffs were to make
such an allegation, nothing in their pleading suggests that
numerous members of the public attended the hearing on that
permit application and voiced concerns about then-existing
traffic conditions. Nor do they allege any similarities with
regard to the traffic patterns at that time. Moreover, for the
reasons stated with regard to Plaintiffs' arbitrary and
capricious due process claims, Plaintiffs do not sufficiently
allege that Defendants' actions were unrelated to a legitimate
government purpose. See supra Subpart V.C.

As Plaintiffs fail to set forth any facts to plausibly
support an equal protection claim, Plaintiffs' Section 1983
claims on this basis must be dismissed. Defendants' Motion as
to these claims is **GRANTED**.

## IX. **Claims for Equitable Relief and Attorney's Fees (Counts 2, 8-11)**

To the extent that Plaintiffs' federal claims for
declaratory and injunctive relief are based on the same

AO 72A
(Rev. 8/82)

allegations underlying the foregoing causes of action, these claims fail for the same reasons discussed supra. Plaintiffs also cannot demonstrate entitlement to attorney's fees, costs, and expenses under Section 1988, because they are not the prevailing party on their Section 1983 claims. See 42 U.S.C. § 1988(b).

## X. State-Law Claims (All Counts)

This Court must remand a case removed from state court when it appears that there is no basis for federal subject-matter jurisdiction. See 28 U.S.C. § 1447(c). Because Plaintiffs cannot proceed on their asserted federal claims, and all parties to this action reside in Georgia, see am. compl., ¶¶ 1-26, Plaintiffs have no basis for invoking the jurisdiction of this Court. See 28 U.S.C. §§ 1331-32 (explaining that federal courts have jurisdiction over cases involving a federal question or diversity of citizenship). Because the Court has no jurisdiction to hear Plaintiffs' state-law claims standing alone, remand is appropriate. As these claims are due to be remanded rather than dismissed, Defendants' Motion seeking their dismissal is **DENIED**.

### CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (dkt. no. 20) is **GRANTED in part** and **DENIED in part**. The Motion is

AO 72A
(Rev. 8/82)

**GRANTED** as to Plaintiffs' federal claims, and it is **DENIED** as to their claims pursuant to Georgia law.

The Clerk of Court is hereby **DIRECTED** to enter the appropriate judgment of dismissal as to Plaintiffs' federal causes of action and to **REMAND** this action to the Superior Court of Glynn County, Georgia, for resolution of the state-law claims.

**SO ORDERED**, this 25TH day of March, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)